CARFAGNO et al v. THE PHILLIES                                                                    Doc. 1
Case 2:06-cv-03737-LDD   Document 1   Filed 08/23/2006   Page 1 of 16
...

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MARK A. CARFAGNO,** | : | |
| 2732 Plover Street | : | |
| Philadelphia, PA 19153 | : | |
| | : | |
| and | : | CIVIL ACTION |
| | : | |
| **KATHERINE M. CARFAGNO** | : | |
| 2732 Plover Street | : | NO. |
| Philadelphia, PA 19153 | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | JURY TRIAL DEMANDED |
| | : | |
| **THE PHILLIES,** | : | |
| One Citizens Bank Way, | : | |
| Philadelphia, PA 19148 | : | |
| Defendant. | | |

## COMPLAINT

Plaintiffs Mark A. and Katherine M. Carfagno, by their attorneys, hereby file this Complaint and allege as follows:

## PARTIES

1. Plaintiff Mark A. Carfagno is an adult citizen of the Commonwealth of Pennsylvania, residing at 2732 Plover Street, Philadelphia, PA 19153, in the Eastern District of Pennsylvania. His date of birth is August 23, 1953 and he is fifty-three (53) years old.

2. Plaintiff Katherine M. Carfagno is an adult citizen of the Commonwealth of Pennsylvania, residing at 2732 Plover Street, Philadelphia, PA 19153, in the Eastern District of Pennsylvania.

3. Defendant the Phillies (hereinafter referred to as "the Phillies") is a professional baseball organization/franchise located in Philadelphia, Pennsylvania with its business offices at One Citizens Bank Way, Philadelphia, PA 19148, in the Eastern District of Pennsylvania.

4. The Phillies are engaged in an industry affecting commerce, as defined in Section 11(h) of the Age Discrimination in Employment Act (hereinafter referred to as the "ADEA"), 29 U.S.C. § 630(h). The Phillies have employed more than twenty (20) employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year. The Phillies are "an employer" within the meaning of Section 11(b) of the ADEA, 29 U.S.C. § 630(b).

5. At all times material hereto, the Phillies acted through their supervisors, who were agents of the Phillies, acting within the course and scope of their employment and in their official capacity.

**JURISDICTION AND VENUE**

6. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiffs' state and local law claims pursuant to 28 U.S.C. § 1367.

7. Venue lies in this Court pursuant to 28 U.S.C. § 1391 (b).

8. All conditions precedent to the filing of this Complaint have occurred or have been complied with, to wit, a timely charge of employment discrimination based on age was filed with the Philadelphia Commission on Human Relations at Docket Number E04114157 and cross-filed with the Equal Employment Opportunity Commission at EEOC Docket Number 17GA500049.

9. Mr. Carfagno received letters from both the EEOC and the Philadelphia Commission on Human Relations dated August 18, 2006, and August 16, 2006, respectively, advising him that he has ninety (90) days within which to bring suit based on his age discrimination claim. This action is being instituted within ninety (90) days of receipt of the right to sue notices.

## FACTUAL BACKGROUND

10. The Phillies hired Mr. Carfagno in April, 1971 in their promotions department and transferred him three (3) months later to the position of groundskeeper.

11. At all times during the course of his thirty-three (33) years of employment with the Phillies, Mr. Carfagno fully and satisfactorily performed his job duties and responsibilities as a groundskeeper.

12. Throughout his tenure with the Phillies, Mr. Carfagno volunteered, and was sought out for, additional duties, including but not limited to:

   a) serving as public address announcer and scoreboard operator for the Phillies-sponsored Carpenter Cup;

   b) serving as public announcer and scoreboard operator at Phillies' games;

   c) serving as public address announcer for Phillies-sponsored promotional Home Run contests;

   d) serving as public address announcer for Phillies-sponsored coaches' clinics;

   e) operating the scoreboard for media games, special games and major league games when a guest announcer was announcing;

    f) serving as public address announcer for Phillies' Dream Week games;

    g) serving as public address announcer for Spring Training Games in Clearwater, Florida;

    h) participating in promotional events involving the Phanatic, including attending a Phanatic book signing and competing with the Phanatic in a motor cross racing event;

    i) participating in promotional interviews related to Opening Day activities;

    j) operating the scoreboard for Temple University football games;

    k) playing the part of the foil for the Phillie Phanatic;

13. No other groundskeepers were sought out for these additional public, higher profile, roles and responsibilities.

14. In June, 2003 the Phillies appointed Michael Boekholder (hereinafter referred to as "Boekholder") as the Head Groundskeeper for the new stadium. At the time of his hire, Boekholder was twenty-nine (29) years old with no experience in groundskeeping for major league baseball.

15. In January, 2004 the grounds crew learned that they would be reporting to Boekholder.

16. From January, 2004 through the beginning of April, 2004, Boekholder made repeated harassing and discriminatory comments about Mr. Carfagno's age to and about Mr. Carfagno, including but not limited to:

    a) stating, on more than one occasion, that he had a "bunch of fucking geriatrics" working for him;

    b) telling Mr. Carfagno that he had been around a long time and asking him when he was going to retire;

    c) asking a former Phillies' employee if he knew when Mr. Carfagno was going to retire;

    d) telling another former Phillies' employee that Mr. Carfagno "couldn't lift as much as the other employees"; and

    e) ridiculing Mr. Carfagno in front of the other groundskeepers, by stating in Mr. Carfagno's presence, to "take the old guy with you" when handing out work assignments.

17. In addition to making repeated age-discriminatory comments to and about Mr. Carfagno, Boekholder regularly singled out Mr. Carfagno for criticism, publicly humiliated and berated him, cursed at him, and assigned him demeaning tasks.

18. On one occasion, with approximately 20 employees rolling out a tarp on the field, Boekholder singled out Mr. Carfagno and yelled at him, saying, "Yo Frog, straighten out the fucking cover."

19. While working on the warning track with several other younger groundskeepers, Boekholder singled Mr. Carfagno out by yelling at him, "what the fuck are you doing, that's not how I said to do it."

20. On another occasion, in front of thousands of fans, Boekholder humiliated Mr. Carfagno by criticizing the way he raked the area around the bases. Mr. Carfagno's expertise in raking the bases had been recognized by team management, and players alike, for thirty-three (33) years.

21. Boekholder assigned Mr. Carfagno to perform tasks generally reserved for less senior groundskeepers including picking up trash.

22. For 2004 pre-season games, Phillies' players and management called on Mr. Carfagno's expertise as senior groundskeeper to assure certain adjustments were made with home plate and/or the bases.

23. Mr. Carfagno typically sat or stood in the area behind home plate on Opening Day each season.

24. On Opening Day 2004, the first official game being played in the new Citizens Bank Park, an historic day for all Phillies' employees, Boekholder assigned Mr. Carfagno to sit in the shop where he could not see the game.

25. Boekholder did not treat the younger groundskeepers in this discriminatory and harassing manner.

26. Boekholder's discriminatory treatment was severe and pervasive and created a hostile work environment for Mr. Carfagno based on his age.

27. Boekholder's discriminatory treatment of Mr. Carfagno was objectively offensive, personally offensive, and injured Mr. Carfagno both physically and mentally.

28. On two separate occasions between February and April, 2004, Mr. Carfagno complained to his former supervisor and then-Facilities Manager, Michael DiMuzio (hereinafter referred to as "DiMuzio"), about Boekholder's discriminatory treatment.

29. DiMuzio told Mr. Carfagno to "hang in there" and that he would try to get him another position within the organization.

30. The Phillies took no action to resolve Mr. Carfagno's complaints and did not offer him an alternate position within the organization.

31. In mid-April, 2004, Mr. Carfagno complained to Michael Stiles (hereinafter referred to as "Stiles"), Vice-President, Operations and Administration, about Boekholder's discriminatory treatment.

32. Stiles took no action to rectify Boekholder's discrimination and harassment of Mr. Carfagno.

33. The Phillies failed to create, maintain and disseminate personnel policies and procedures during Mr. Carfagno's employment, including but not limited to any relating to a hostile work environment or any procedures for complaining of or addressing such conduct.

34. The discrimination and harassment directed at Mr. Carfagno caused him to suffer such severe emotional harm, distress and anxiety that he became sick and was no longer able to perform his job duties.

35. On or around April 15, 2004, Mr. Carfagno went out on sick leave at the instruction of his physician, and shortly thereafter, began treating regularly with a psychiatrist for anxiety and depression.

36. Prior to Mr. Boekholder's discriminatory treatment, Mr. Carfagno had never suffered from anxiety, depression or any other mental condition.

37. By letter dated July 1, 2004, the Phillies informed Mr. Carfagno that he did not qualify for short-term disability under their disability plan and, despite his thirty-three (33) years with the organization, told him that his salary would no longer be paid.

38. In this July 1, 2004 letter, the Phillies further told Mr. Carfagno that his absence would be treated as unpaid FMLA leave for the next twelve (12) weeks.

39. On October 1, 2004, while fighting to recover from anxiety and depression resulting from the Phillies' discriminatory treatment, Mr. Carfagno received a letter from the Phillies informing him that they were treating his extended absence as a "resignation" of employment.

40. Mr. Carfagno never resigned his employment.

41. Mr. Carfagno was constructively discharged based on Boekholder's discriminatory treatment, because the harassment he suffered was so severe and pervasive that it was unreasonable and intolerable for him to continue working for the Phillies.

42. Boekholder's discriminatory treatment of Mr. Carfagno was willful and committed with malice and reckless indifference of the law.

43. To date, Mr. Carfagno continues to suffer from Boekholder's discriminatory treatment and has not been medically cleared to return to work in any capacity at the present time.

44. As a result of the Phillies' actions, Mr. Carfagno has suffered various losses, including loss of pay and benefits, disruption and loss of his career, emotional pain and suffering, humiliation, mental anguish and loss of enjoyment of life.

45. In 2003, the Phillies created a 75-minute promotional video, hosted by Phillies' Chairman Bill Giles, entitled "Field of Memories:  The Story of Phillies Baseball at the Vet."  The video carries the copyright of the Phillies.

46. Mr. Carfagno is featured in five different segments of the video; one of the segments of the video is dedicated entirely to Mr. Carfagno and is entitled, "Frog," which is Mr. Carfagno's well-known nickname.

47. The first time Mr. Carfagno is featured in the video, the Phillies refer to him as a "Lifer" with the organization.

48. Upon information and belief, the Phillies have broadcast the video, or made it available for broadcast, multiple times since constructively discharging Mr. Carfagno.

49. The video was broadcast on television as recently as July, 2006 during a rain-delayed Phillies' game.

50. The Phillies also broadcast the video during rain-delayed games at Citizens Bank Park on PhanaVision.

51. The Phillies also sell the video in DVD format at Citizens Bank Park under the title "The Vet: The Complete History of Phillies Baseball at Veterans Stadium."

52. The Phillies also continue to use Mr. Carfagno's name and likeness in a book entitled <u>The Phillie Phanatic's Moving Day</u>. The book carries the Phillies' copyright.

53. The Phillies sell this book at Citizens Bank Park.

54. Following his constructive discharge, Mr. Carfagno did not give implied or express consent to the Phillies to use his name or likeness in the "Field of Memories" video or Phanatic book, nor for any other promotional or commercial purposes.

55. The Phillies have broadcast the video, or made it available for broadcast, for commercial and/or promotional purposes.

56. The Phillies have sold the book, or made it available for sale, for commercial and/or promotional purposes.

57. By broadcasting the video, or making it available for broadcast, the Phillies have appropriated, and continue to appropriate, to their own use or benefit the

reputation, prestige, social or commercial standing, public interest or other value of Mr. Carfagno's name and/or likeness.

58. By selling the book, or making it available for sale, the Phillies have appropriated, and continue to appropriate, to their own use or benefit the reputation, prestige, social or commercial standing, public interest or other value of Mr. Carfagno's name and/or likeness.

59. The Phillies have broadcast the video, or made it available for broadcast, with the knowledge, and with intentional disregard or indifference to the fact, that it would cause Mr. Carfagno severe physical and emotional distress.

60. The Phillies have sold the book, or made it available for sale, with the knowledge, and with intentional disregard or indifference to the fact, that it would cause Mr. Carfagno severe physical and emotional distress.

61. The broadcast of the video has caused Mr. Carfagno severe physical and emotional distress, embarrassment, and public humiliation.

62. The sale of the book has caused Mr. Carfagno severe physical and emotional distress, embarrassment, and public humiliation.

63. For all the reasons set forth above, Plaintiff Katherine M. Carfagno suffered, and continues to suffer, the loss of society, services, companionship, and consortium of her spouse, Mark A. Carfagno, as a result of the emotional distress and its physical manifestations caused by the Phillies' unlawful appropriation of Mr. Carfagno's name and likeness.

## **COUNT I**

**Discrimination on the basis of age in Violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq.**

64. Plaintiff Mark A. Carfagno incorporates the averments in Paragraphs 1 through 63, as though fully set forth herein.

65. As set forth above, the Phillies have discriminated against Mr. Carfagno by creating a hostile work environment based on his age and constructively discharging his employment in violation of the ADEA.

66. Mr. Carfagno has been so severely injured by the Phillies' discriminatory conduct that he is physically and mentally unable to return to work in any capacity at the present time.

WHEREFORE, Plaintiff, Mark A. Carfagno, respectfully prays that judgment be entered in his favor, and against Defendant the Phillies, as follows:

    A. For a monetary judgment representing past and future damages for loss of income, and all other benefits, including retirement and other employment benefits denied Mr. Carfagno due to the unlawful actions of the Phillies, together with interest on said amounts;

    B. For a monetary judgment representing liquidated damages for the Phillies' willful violations of the Age Discrimination in Employment Act;

    C. For the costs of suit and interest, including an award of reasonable attorneys' fees; and

    D. For such other and further relief as the Court deems just and proper.

## COUNT II

### Discrimination on the Basis of Age in Violation of the Philadelphia Fair Practices Ordinance, Pa. Code § 9-1103 et seq.

67. Plaintiff Mark A. Carfagno incorporates the averments in Paragraphs 1 through 66, as though fully set forth herein.

68. The Phillies' discriminatory and harassing conduct based on Mr. Carfagno's age constituted a violation of the Philadelphia Fair Practices Ordinance, Pa. Code § 9-1103 et seq.

69. Mr. Carfagno has been so severely injured by the Phillies' discriminatory conduct that he is physically and mentally unable to return to work in any capacity at the present time.

70. Mr. Carfagno has properly exhausted his remedies with the Philadelphia Commission on Human Relations.

WHEREFORE, Plaintiff, Mark A. Carfagno, respectfully prays that judgment be entered in his favor, and against Defendant the Phillies, as follows:

   A. For a monetary judgment representing past and future damages for loss of income, and all other benefits, including retirement and other employment benefits denied Mr. Carfagno due to the unlawful actions of the Phillies, together with interest on said amounts;

   B. For a monetary judgment representing damages in compensation for Mr. Carfagno's emotional distress, humiliation, and pain and suffering;

   C. For a monetary judgment representing exemplary damages;

D.  For the costs of suit and interest, including an award of reasonable attorneys' fees; and

E.  For such other and further relief as the Court deems just and proper.

## COUNT III

**Appropriation of Name or Likeness, Restatement (Second) of Torts §652C**

71.  Plaintiff Mark A. Carfagno incorporates the averments in Paragraphs 1 through 70, as though fully set forth herein.

72.  The Phillies have violated Mr. Carfagno's right to privacy because they have unlawfully appropriated his name and likeness by broadcasting or making available for broadcast the "Field of Memories" video.

73.  The Phillies have violated Mr. Carfagno's right to privacy because they have unlawfully appropriated his name and likeness by selling or making available for sale the book entitled <u>The Phillie Phanatic's Moving Day</u>.

74.  The Phillies have broadcast the video, or made it available for broadcast, for commercial and/or promotional purposes.

75.  The Phillies have sold the book, or made it available for sale, for commercial and/or promotional purposes.

76.  By broadcasting the video, or making it available for broadcast, The Phillies have appropriated to their own use or benefit the reputation, prestige, social or commercial standing, public interest or other value of Mr. Carfagno's name and likeness.

77. By selling the book, or making it available for sale, The Phillies have appropriated to their own use or benefit the reputation, prestige, social or commercial standing, public interest or other value of Mr. Carfagno's name and likeness.

78. Following his termination, the Phillies did not have Mr. Carfagno's implied or express consent to use his name and/or likeness in said video.

79. Following his termination, the Phillies did not have Mr. Carfagno's implied or express consent to use his name and/or likeness in said book.

80. The Phillies' use of the video has caused Mr. Carfagno severe physical and emotional distress, embarrassment and public humiliation.

81. The Phillies' sale of the book has caused Mr. Carfagno severe physical and emotional distress, embarrassment and public humiliation.

82. The Phillies' acts were intentional and committed with reckless disregard for the pain and suffering they would cause Plaintiff.

WHEREFORE, Plaintiff Mark A. Carfagno respectfully prays that judgment be entered in his favor, and against Defendant the Phillies, as follows:

A. For a monetary judgment representing damages in compensation for Mr. Carfagno's emotional distress, humiliation, and pain and suffering;

B. For punitive damages for the Phillies' intentional and willful conduct;

C. For appropriate injunctive relief;

D. For the costs of suit and interest, including an award of reasonable attorneys' fees; and

E.  For such other and further relief as the Court deems just and proper.

## COUNT IV

### Loss of Consortium

83.  Plaintiff Katherine M. Carfagno incorporates the averments in Paragraphs 1 through 82, as though fully set forth herein.

84.  Plaintiff Katherine M. Carfagno is the lawful spouse of Plaintiff Mark A. Carfagno and was his spouse on and after October 1, 2004 when the Phillies' unlawful appropriation of Mr. Carfagno's name and likeness began.

85.  Plaintiff Katherine M. Carfagno brings this action to recover for the loss of the society, services, companionship, and consortium of her spouse, Mark A. Carfagno, as a result of the emotional distress and its physical manifestations caused by the Phillies' unlawful appropriation of Mr. Carfagno's name and likeness.

86.  The Phillies' unlawful appropriation of Mr. Carfagno's name and likeness was the direct and proximate cause of his injuries and the resulting loss to Katherine M. Carfagno.

87.  The Phillies' unlawful conduct was committed intentionally, willfully and in reckless disregard for the law.

WHEREFORE, Plaintiff Katherine M. Carfagno respectfully prays that judgment be entered in her favor, and against Defendant the Phillies, as follows:

A.  For a monetary judgment representing compensatory damages;

B.  For punitive damages for the Phillies' intentional and willful conduct;

C. For the costs of suit and interest, including an award of reasonable attorneys' fees; and

D. For such other and further relief as the Court deems just and proper.

          NANCY O'MARA EZOLD, P.C.

By: _____NOE4736_____
    NANCY O'MARA EZOLD
    Attorney No. 32152 (PA)
    JACQUELINE M. WOOLLEY
    Attorney No. 69442 (PA)
    One Belmont Avenue, Suite 501
    Bala Cynwyd, PA  19004

    Attorneys For Plaintiffs
    Mark A. Carfagno and Katherine M. Carfagno

Date: August 23, 2006